[S. F. No. 3367.   Department Two.—June 10, 1905.]

## GETZ BROS. & CO., Appellant, *v.* FEDERAL SALT COMPANY, Respondent.

CONTRACTS—ILLEGAL RESTRAINT OF TRADE—VOID AGREEMENT.—A contract in consideration of a specified sum that all salt shall be purchased from the Federal Salt Company for the period of two years, and not to purchase any salt from any other parties, and not to import or cause to be imported or bring any salt to the Pacific Coast of North America, other than such as may be purchased from such company, and to discourage any such shipments or importations by other parties, is in illegal restraint of trade and void, as being in violation both of the Civil Code and of the Sherman Anti-trust Act of Congress.

ID.—ACTION UPON CHECKS—CONSIDERATION OF ILLEGAL AGREEMENT—CONTEMPORANEOUS AGREEMENT.—Where the parties executed another contemporaneous agreement, under the terms of which the plaintiff sold all of the salt to the defendant upon agreed terms, and assigned all rights of purchase and options then existing or which might exist within two years, and the defendant agreed to pay plaintiff in addition the same sum as that specified in the other contract as its consideration, for which sum the checks in suit were given, the checks, together with both the written agreements form substantial parts of one transaction, and are to be construed together, and the terms of the illegal contract not being severable, it is wholly void, and an action cannot be maintained upon the checks.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. F. H. Kerrigan, Judge.

The facts are stated in the opinion of the court.

Naphtaly, Freidenrich & Ackerman, for Appellant.

Louis Titus, for Respondent.

HENSHAW, J.—This is an action upon two checks, each for the sum of five thousand dollars, drawn by the defendant upon the Bank of California, and payable to the order of plaintiff. The checks were drawn December 18, 1901, were presented for and refused payment December 31, 1901. Defendant for answer to the action set up as an affirmative defense that the checks were made and delivered as an integral part of a certain transaction between the parties, evidenced by written contracts. The court found the facts as set up in the answer, found further that the written contracts between the parties were against public policy, in restraint of trade, and in violation of an act of Congress known as the Anti-trust or Sherman Act, and gave judgment for defendant accordingly. The court's decision in this regard is presented for review upon this appeal.

The written contracts were executed upon the same day and date with the checks and as a part of the same transaction. They recited that the plaintiff owned 1,336 tons of factory-filled salt, one hundred tons of coarse common salt, and eighty tons of dairy salt, all of which were on board ship in transit from Liverpool to San Francisco, and that the defendant, Federal Salt Company, desired to purchase the same. Wherefore Getz Brothers & Co. sold all of the salt to the Federal Salt Company, which agreed to pay the original cost-price of the salt, including freight, insurance, duty, and all expense of landing the salt in San Francisco, and it agreed in addition thereto to pay to Getz Brothers & Co. the sum of ten thousand dollars in cash, the receipt of which was acknowledged by Getz Brothers & Co. Getz Brothers & Co. then further agreed to assign to the Federal Salt Company all their rights to purchase salt, and all the options which they had, or might thereafter secure within a period of two

years, either in England or elsewhere, and they agreed further, that any salt which they might then own, or have contracted for, or which they might thereafter purchase within two years, other than such salt as might be purchased from the Federal Salt Company, should be sold by them to the Federal Salt Company at ten per cent below the actual cost. Such was the substance of the first contract. The second contemporaneous agreement declared:—

"This agreement made this 18th day of December, 1901, by and between Getz Brothers & Company, a corporation, and Louis Getz, the parties of the first part, and the Federal Salt Company, a corporation, the party of the second part, witnesseth:

"That in consideration of the sum of ten thousand ($10,-000) dollars to the parties of the first part in hand paid, the receipt of which is hereby acknowledged, the parties of the first part and each of them hereby guarantee that they and all persons or firms with or in which they may be interested, will purchase their entire demands for salt from the said party of the second part, at the list prices of said party of the second part for a period of two (2) years from the date of this contract, and they will not purchase any other salt from any other parties, and will not import or cause to be imported, or bring any salt to the Pacific Coast of North America other than such salt as they may purchase from the party of the second part. And said parties of the first part further agree that they will discourage in any possible manner any such shipments or importations of salt by any other parties.

"And whereas it would be extremcly difficult from the nature of the case to ascertain the actual damages, in case the parties of the first part violate this contract, it is hereby agreed between the parties that in case the parties of the first part violate this contract in any particular, that they will pay to the party of the second part the sum of five thousand ($5,000) dollars as liquidated damages for such violation."

Getz Brothers & Co. were paid in full according to the terms of the contract the original cost price of the salt, including freight, insurance, duty, and all expenses of landing in San Francisco, and this action brought upon the two

checks is in fact for the ten thousand dollars stipulated in the agreements to be paid. Unquestionably the checks in suit, together with the written agreements, form substantial parts of one transaction, and are to be construed together. (Civ. Code, sec. 1642.) A reading of these contracts establishes that by no reasonable intendment can it be said that the ten thousand dollars was to be paid as the purchase price of the salt. To begin with, provision is made for the purchase of the salt at cost, with incidental expenses, and, in the second place, by the very terms of the contract which is above quoted, that ten thousand dollars is made the consideration of the agreement by the plaintiffs to refrain from purchasing salt from any other parties than the defendant, and to refrain from importing or causing to be imported, or in any way bringing any salt to the Pacific Coast of North America, other than such as may be purchased by the defendant. But the agreement does not even stop here. The plaintiffs engaged themselves actively to discourage any such shipments or importations of salt by any other person. And, finally, it may be said, that if, by the extremest liberality, it should be held that the ten thousand dollars was in any way or to any extent to be regarded as mere profit to the seller for the cargo of salt sold to defendant, nevertheless it must be plain that it was not wholly nor separately such profit, but that part of it, at least, was a consideration for the other covenants into which plaintiffs entered with defendant. In this view, how much of the ten thousand dollars was mere profit upon the single salt sale, and how much was the consideration for the other covenants, it is clearly impossible to say, and, if it be true that the other covenants imported a base or illegal consideration, the terms of the contract not being severable, it is wholly void. (*Prost* v. *More,* 40 Cal. 347; *Arnot* v. *Pittston Coal Co.,* 68 N. Y. 558;[1] *Embrey* v. *Jemison,* 131 U. S. 336, 9 Sup. Ct. 776.)

That these covenants are illegal as being in restraint of trade, against the express mandate of the law of this state and of the United States, we entertain no doubt. Section 1673 of our Civil Code is as follows: "Every contract by which any one is restrained from exercising a lawful profession, trade, or business of any kind, otherwise than is provided

[1] 23 Am. Rep. 190.

by the next two sections, is to that extent void." The only exceptions contemplated by the succeeding sections are to the effect that a vendor who sells the good-will of his business may agree not to carry on a similar business within a single specified county or city, so long as the buyer, or any person deriving title to the good will from him, carries on a like business therein; and that a partner, in anticipation of the dissolution of a partnership, may agree not to carry on a similar business within the city where the partnership business was transacted. Saving for these two classes of agreement, all others which restrain the exercise of a lawful business, trade, or vocation, are void. (*Santa Clara Mill Co.* v. *Hayes,* 76 Cal. 387[1], 18 Pac. 391; *Vulcan Powder Co.* v. *Hercules Powder Co.,* 96 Cal. 510[2], 31 Pac. 581.)

The Sheman Anti-trust Act, by its first section, declares as follows: "Every contract, combination in the form of a trust, or otherwise, or conspiracy in restraint of trade or commerce among the several states or with foreign nations, is hereby declared to be illegal." (26 U. S. Stats. at Large, 647.) In the contract under consideration it cannot for a moment be denied that there are present the illegal elements forbidden both by our state and our national law. There is not only the direct agreement to refrain from purchasing salt within the state, and to refrain from purchasing it abroad, but there is moreover a specific agreement to "discourage in any possible manner any such shipments or importations of salt by any other parties." The supreme court of the United States in construing this act has held, it is true, that while the restraint may be slight (*United States* v. *Trans-Missouri Freight Assn.,* 166 U. S. 290, 17 Sup. Ct. 540), it still must be a direct restraint upon commerce. That is to say, it must restrain primarily and not secondarily or incidentally. (*United States* v. *E. C. Knight Co.,* 156 U. S. 1, 15 Sup. Ct. 249.) Both of these vicious elements are found in this contract. There is not only an obvious restraint upon trade, but the direct and primary purpose of the contract is to effect such restraint. It may be added that this precise contract has come under the review of the federal court in the case of *United States* v. *Federal Salt Co.* (No. 13,303, Circuit Court of the United States,

[1] 9 Am. St. Rep. 211.       [2] 31 Am. St. Rep. 242.

Ninth Judicial Circuit). Both of the parties to this action were parties to that action, and the circuit court, decreeing the contract to be in violation of the Sherman law, granted its injunction restraining both parties to this action from ''further going on, carrying out, maintaining or acting in any way, shape, manner or form'' under this contract.

The judgment and order appealed from are therefore affirmed.

McFarland, J., and Lorigan, J., concurred.

Hearing in Bank denied.